IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 12-cv-01352-WYD

JOHNNIE MAURICE BUCKLEY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security[1],

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits ["DIB"] and supplemental security income ["SSI"]. For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff filed for DIB and SSI benefits in March 2009. (Transcript ["Tr."] 226-35.) He claimed he became disabled on February 10, 2009, at the age of 37 due to rhabdomyolysis, which is the breakdown of muscle fibers that leads to the release of muscle fiber contents (myoglobin) into the bloodstream. *U.S. National Library of Medicine*, *PubMed Health*, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001505/. Plaintiff was diagnosed with rhabdomyolysis subsequent to taking Chantix in January

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant pursuant to Fed. R. Civ. P. 25(d).

2009 to stop smoking. Within three to four days of taking Chantix, Plaintiff developed flu-like symptoms, with muscle aching and weakness. By February 2010, Plaintiff claimed he could no longer work because he could barely move and was in continuous pain. (Tr. 50-51, 288.) Plaintiff was awarded long term disability through his work, and was terminated from his employment as a computer programmer.

At the October 2010 hearing, Plaintiff testified that he had constant, whole body aching affecting all of the muscles from his hands to his toes. (Tr. 50-51.) He had to have help with such activities as getting in and out of the bathtub, and used a cane. (*Id.*) He was also prescribed a walker due to his instability. (*Id.* 53.) Prior to taking Chantix, Plaintiff asserts he had been physically active in his employment and recreational athletics.

Plaintiff's step-father, Ray Smith, testified that Plaintiff moved in with his parents in February 2009 and lived there through December 2009 because he was not physically able to care for himself. (Tr. 55). He also testified that while Plaintiff now has his own place, he stays with his parents 40 to 50 percent of the time. (*Id.* 58.) Even when Plaintiff is at his apartment, Mr. Smith has to go over there and assist him with such things as getting in and out of the shower. (*Id.* 56.) Further, he said Plaintiff's son has to stay with a babysitter because Plaintiff cannot take care of him. (*Id.* 57.)

Plaintiff's application for DIB and SSI was denied initially, and he requested a hearing. (Tr. 86-87). Following hearings in October 2010 and January 2011 (*id.* 65-72), the administrative law judge ["ALJ"] issued a decision on February 9, 2011, concluding that Plaintiff was not disabled. (*Id.* 6-17.)

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 11). At step two, the ALJ found a severe impairment of rhabdomyolysis. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the listed impairments. (*Id.*)

The ALJ then assessed Plaintiff's residual functional capacity, finding that he could perform the full range of light work. (Tr. 12). At step four, the ALJ found that Plaintiff could perform past relevant work as generally performed in the community. (*Id.* 17.) The ALJ also found that Plaintiff's impairment failed to meet the durational requirement as "the evidence indicates that this condition did not last for 12 continuous months." (*Id.* at 11.) However, he stated that even if the impairment "is a medically determinable impairment and is severe, the evidence as a whole supports a conclusion that claimant can perform his past relevant work." (*Id.*) Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from February 10, 2009 through the date of the decision. (*Id.* at 17.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), making the ALJ's February 2011 decision the final decision for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). This appeal followed.

II.     ANALYSIS

    A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

      B.     <u>The Merits of Plaintiff's Appeal</u>

Plaintiff argues that the ALJ relied upon the opinion of a non-examining physician when other evidence existed in the record or should have been developed. He further argues that the ALJ erred in inferring that little pursuit of medical care by one without medical insurance is a reflection of a less than serious condition. I agree that the ALJ erred and find that a remand is required.

The ALJ gave "most weight to the opinion of the claimant's treating neurologist" Dr. Bryniarski, relying on the fact that "[t]he medical expert, Dr. Reed, testified that the neurological exam and report were 'extremely definitive.'" (Tr. 16.) The ALJ also gave "great weight" to the opinion of medical expert Dr. Reed, finding it "is consistent with the

medical evidence in the file and is supported by the claimant's gradual improvement and lack of medical care after September or October 2009." (*Id.*) The ALJ stated:

> In summary, the medical and other evidence supports a conclusion that, while the claimant may have experienced transient muscular and neurological impairment, these symptoms resolved in less than 12 months after their onset. No treating or examining physician has given him functional limitations due to these symptoms, and his condition appears to have resolved as suggested by the non-examining medical expert Dr. Reed. Therefore, the undersigned concludes that the claimant retains the residual functional capacity for at least the full range of light work.

(*Id.*)

I find that the ALJ erred in relying on Dr. Reed's opinion and, through Dr. Reed, the opinion of the treating neurologist Dr. Bryniarski. Dr. Reed's testimony as a medical expert at the October 2010 hearing does not support reliance on either his opinion or that of Dr. Bryniarski in finding that Plaintiff is not disabled. One of the issues at the hearing was the sparsity of medical records after April 2009. Given this, the ALJ questioned Dr. Reed whether it would be beneficial for him to send Plaintiff for a consultative examination by a particular specialist. (Tr. 31.) Dr. Reed stated his belief that this "certainly" was "necessary", and that Plaintiff should receive a combined neurological and rheumatologic assessment. (*Id.* 32-34.) Dr. Reed expressed this opinion despite his testimony relied on by the Commissioner that (1) Dr. Bryniarski's April 2009 evaluation "was extremely definitive" and (2) that the condition Plaintiff had "is generally self-limiting and non-progressive". (*Id.* 11, 34.)[2] The ALJ stated he would

---

[2] Dr. Reed did not suggest that Plaintiff's condition had actually resolved, and the ALJ erred in so finding. (*Id.* 11.)

take Dr. Reed's recommendation under advisement and that he thought he would order two consultative examinations.  (*Id.*)

However, the ALJ did not order a consultative examination or even discuss in his decision why he chose not to do so.  Indeed, his decision did not discuss Dr. Reed's testimony about the need for a consultative examination.  The Tenth Circuit has stated that an ALJ "should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability."  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).  Certainly, the evidence suggests that in this case.

Even Dr. Bryniarski, whose opinion the ALJ also gave weight to, stated in her report that Plaintiff should receive further laboratory workup, an EMG nerve conduction study, and possible muscle biopsy.  (Tr. 412.)  Thus, her report does not appear to be definitive as to Plaintiff's condition, and I note she was not asked to opine whether Plaintiff's condition imposed any restrictions on his ability to work, *i.e.*, to perform a functional assessment.  There also was not any other evidence in the record as to Plaintiff's capacity for walking, standing or sitting, the level of exertion that he can perform, or the other functional requirements of work.  Indeed, this was noted in the DDS Medical Evaluation/Case Analysis dated August 2009 which stated "[t]he medical evidence is insufficient to assess clmt's current condition/functioning".  (Tr. 405.)  Thus, the ALJ's RFC finding that Plaintiff could perform light work does not appear to be supported by substantial evidence.  *See Baker v. Barnhart*, No. 03-7041, 2003 WL

22905238, at *3 (10th Cir. Dec. 10, 2003) (unpublished) (where there is no evidence to support an RFC determination, the ALJ should not make such a determination).

The fact that a consultative examination was not ordered is particularly troubling in this case given the ALJ's failure to develop the record as to Plaintiff's medical treatment at University Hospital. While the ALJ faulted Plaintiff for receiving "minimal medical treatment", noting treatment from Plaintiff's treating sources was all in the first year after Plaintiff's problems developed (Tr. 11, 14), there is evidence in the record that Plaintiff continued to receive medical care from University Hospital throughout 2010. Plaintiff testified that he continued receiving medical treatment between April and October 2010 at University Hospital which treated him despite his lack of insurance. (*Id.* 25.)[3] His step-father also testified to treatment during this period, and noted he had taken Plaintiff to a doctor two or three weeks before the hearing. (*Id.* 59, 61.)

It is axiomatic that "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Astrue*, 73 F.3d 1019, 1022 (10th Cir. 1996). In *Carter*, the ALJ discounted a diagnosis of depression because there were no medical tests to support it, and the court remanded for further development of the record on this issue. *Id.* In this case, the ALJ discounted both the duration and the severity of Plaintiff's impairment based on the lack of medical records. Despite being advised of additional records during the relevant period that could have addressed both issues, the ALJ failed to

---

[3] Plaintiff also testified in response to questioning by Dr. Reed that he was prescribed an anti-depressant medication and Vicodin by University Hospital , and that he followed up with that hospital as to his medication once a month or every two weeks. (*Id.* 28-29.)

develop the record by obtaining these records.  Thus, as in *Carter*, this case must be remanded for further development of the record.  The Commissioner's argument that there was no need to further develop the record because sufficient information existed for the ALJ to make his disability determination is without merit.

In this case, after the record is properly developed, there may be no need for a consultative examination.  "Although the current state of the record suggests that a consultative exam may be necessary", I "leave the decision whether to order a consultative exam up to the ALJ" after the record has sufficiently been developed.  *Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006).

I also agree with Plaintiff that the ALJ failed to properly assess consider his inability to pay for medical treatment as a factor before discounting Plaintiff's credibility based on minimal medical treatment.  (*See* Tr. 14—finding that Plaintiff's own conduct suggests that his condition is less serious than what he is alleging in this claim for benefits" noting as a basis for this that Plaintiff "has had minimal medical treatment.")  "To the extent that the ALJ relies on noncompliance with prescribed treatment to deny benefits, . . . he must develop the record as to noncompliance and determine (1) whether the treatment could restore the ability to work and (2) whether the claimant's failure to follow treatment is justifiable.  *Tucker v. Barnhart*, 201 F. App'x 617, 622 (10th Cir. 2006) (citing Soc. Sec. Rul. 82–59, 1982 WL 31384, at *2 (1982)); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993).  An individual's inability to afford treatment may constitute justifiable cause for failing to comply with prescribed treatment.  *Id.* (citing Soc. Sec. Rul. 82–59, 1982 WL 31384, at *4.)

The record contains evidence that supports Plaintiff's argument that he was unable to pay for medical treatment. Plaintiff testified that he did not have the financial means to see a doctor after September 2009 due to the fact that his insurance ran out and he could not pay for it, and that he went to University Hospital because they treated him without insurance. (Tr. 26, 27.) His step-father testified that while Plaintiff went to University Hospital as often as he could, it was getting to the point where that hospital would not treat him because of his lack of insurance. (*Id.* 60.) Plaintiff also testified that he was denied services at Denver Health due to lack of proof of insurance. (*Id.* 36-37.) The ALJ acknowledged some of this evidence (*id.* 12-13), yet did not consider whether Plaintiff's financial status constituted a justifiable reason not to seek additional treatment.[4] This also was error that must be addressed on remand.

Finally, I direct the ALJ on remand to address the credibility of the testimony of Plaintiff's step-father. His testimony addressed the severity and duration of Plaintiff's impairments in some detail. While the ALJ noted some of his testimony, he did not address whether he found it credible and, if not, the reasons for that. This should be addressed on remand. I also direct the ALJ to consider the award of long-term disability benefits to Plaintiff from another source related to his past employment. "[T]he regulations require the ALJ to 'consider all evidence in [the] case record when

---

[4] Indeed, the ALJ appeared to fault Plaintiff and discount his credibility because he sought disability benefits which would provide "not only money stipends but also potentially free access to health care." (*Id.* 14.) He then stated "that the claimant's evidence is inevitably colored by the claimant's pecuniary interest in the outcome of this disability claim." (*Id.*) This was improper, as every claimant who seeks disability benefits arguably has such interest.

[he] makes a determination or decision whether [claimant is] disabled,'. . . ."

*Carpenter v. Chater*, 537 F.3d 1264, 1266 (10th Cir. 2008) (quotation omitted).

### III.   CONCLUSION

Based upon the foregoing, I find that the ALJ's decision is not supported by substantial evidence.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  January 6, 2014

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge